## Jacobs v. Globe Indemnity Company

*Finan & Beecher*, for plaintiff.

*Woltjen & Kayton*, for defendant.

DAVIS, P. J., March 29, 1966.—This action of assumpsit was brought by plaintiff, William Jacobs, an agricultural employe of Margaret L. Hamilton, against defendant, Globe Indemnity Company, upon a

written contract in the form of a workmen's compensation insurance policy issued by defendant to said Margaret L. Hamilton, effective for the period from March 18, 1958, to March 18, 1959. Plaintiff avers, in the complaint to which a copy of the contract marked "Exhibit A" is attached, that he was employed by Margaret L. Hamilton to care for her house and grounds, to farm, to garden, and to serve as her general handyman; that, on February 20, 1959, while plaintiff was working in the course of his regular employment on the premises of Margaret L. Hamilton, he fell and sustained injuries which have rendered him totally and permanently disabled; that defendant reimbursed plaintiff for drugs, hospital, nursing and medical care in the aggregate amount of $467 and paid plaintiff weekly compensation of $25 for the 26-week period extending from February 20, 1959, to August 8, 1959, or, a total of $650; but that defendant terminated further payment of compensation on August 9, 1959, although plaintiff's total disability has continued. He seeks a judgment for compensation at the rate of $25 per week from August 8, 1959, to such date as the court may direct. The case is now before this court for consideration of defendant's preliminary objections in the nature of a demurrer and a motion to strike off certain portions of the complaint.

Two principal questions are presented: whether an agricultural employe, excluded as such from the coverage of the Workmen's Compensation Act, may recover comparable compensation, measured by the same statutory standard which would apply if he had been so covered, in an action of assumpsit on a special contract of insurance issued to his employer; and whether the terms of the contract in the instant case permit such recovery.

The portions of that contract, upon which plaintiff relies, read as follows:

"GLOBE INDEMNITY COMPANY

"...

"Agrees with the insured, named in the *declarations made a part hereof*, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy.

"INSURING AGREEMENT

"I   Coverage A — Workmen's Compensation

"To pay promptly when due all compensation and other benefits *required* of the insured *by the Workmen's Compensation law*.

"...

"EXCLUSIONS

"This policy does not apply:

"...

"(b) unless required by law *or described in the declarations*, to domestic employment or to farm or agricultural employment; ...

"CONDITIONS

"...

"7. Statutory Provisions—Coverage A. The Company shall be directly and primarily liable to any person entitled to the benefits *of the workmen's compensation law under this policy*. The obligations of the company may be enforced by such person, or for his benefit by any agency authorized by law, whether against the company alone or jointly with the insured. ...." (Italics in all above excerpts supplied.)

"DECLARATIONS

"...

"Item 2. Policy Period:

From Mar 18, 1958 to Mar 18 1959 ....

"Item 3. Coverage A of this policy applies to the workmen's compensation law and any occupational disease law of each of the following states:   PA.

"Item 4. Classification of Operations

| "Entries in this item, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy | "Code Premium Basis No. Estimated Total Annual Remuneration | "Rates Per $100 of Remuneration | "Estimated Annual Premiums |
|---|---|---|---|
| "1 | | | |
| "FARMS—ALL EMPLOYEES OTHER THAN INSERVANTS AND CLERICAL OFFICE EMPLOYEES INCLUDING DRIVERS, CHAUFFEURS AND THEIR HELPERS. | 0006 $1,500 | 2.10 | 31.50 |
| "POLICY FEE | 0020 | | 8.00 |

"Minimum Premium $28.00       Total Estimated Annual Premium $39.50".

Counsel for defendant have attacked the complaint upon an excessively broad front. We need not discuss the objection that this action sounds in tort, rather than contract; that action is barred by the statutory limitation applicable to trespass actions; and that plaintiff has failed to reduce his claim to a judgment against his employer before proceeding against defendant, the insurance carrier, as he would be required to do if "Coverage B" were his sole available basis for relief under the insurance contract. Defendant's relevant objections may be summarized as follows: (1) This court has no jurisdiction of the instant action because the Workmen's Compensation Act confers exclusive original jurisdiction of workmen's compensation benefit claims upon the Workmen's Compensation Board. (2) An action of assumpsit does not lie against either

defendant or Margaret L. Hamilton on the insurance contract here presented. (3) Plaintiff cannot maintain this action against defendant because there is no privity of contract between plaintiff and defendant.

Counsel's challenge to the jurisdiction is based upon the assumption that the Workmen's Compensation Act removes from the jurisdiction of the courts all claims in the nature of workmen's compensation benefits and transfers them, without qualification, to the jurisdiction of the Workmen's Compensation Board. Analysis of the constitutional basis and the structure of the act will show that this assumption cannot be supported. Authority for this legislation was created by the amendment of November 2, 1915, to the Pennsylvania Constitution, art. III, sec. 21, which provides, in part:

"The General Assembly may enact laws requiring the payment by employers . . . of reasonable compensation for injuries to employes arising in the course of their employment . . . regardless of fault of employer or employe, and fixing the basis of ascertainment of such compensation and the maximum and minimum limits thereof, and *providing special or general remedies for the collection thereof. . . .*" (Italics supplied.)

The Act of June 2, 1915, P. L. 736, passed in anticipation of the constitutional authorization, became effective subsequently thereto on January 1, 1916. In it, the legislature chose not to chisel out a completely new monolithic legal system controlling the compensation aspect of employer-employe relations, but, significantly, to erect a new structure providing for the right to compensation without regard to negligence, as well as for the procedure to obtain it, which would be based squarely upon the foundation of that venerable legal concept, *the agreement of the parties,*—a concept well within the traditionally established and recog-

nized jurisdiction of the common law courts. Such agreement was not to be a mere legal fiction. Although section 302(a), 77 PS §461, provided a conclusive presumption that parties covered by the act have accepted article three thereof, it also prescribed procedure whereby either party might file a written statement declaring a contrary intention, thus removing themselves from application of the act. The coverage of the original act was relatively comprehensive, for section 104 provided:

"The term 'employe' as used in this act is declared to be synonymous with servant, and includes all natural persons who perform services for another for a valuaable consideration, exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer, and exclusive of persons to whom articles or materials are given out to be made up, cleaned, washed, altered, ornamented, finished, or repaired, or adapted for sale, in the worker's own home, or on other premises not under the control or management of the employer".

This coverage was cut down the next day, not by a specific amendment to section 104 of the original act, but by the supplementary Act of June 3, 1915, P. L. 777, which provided:

"Section 1. Be it enacted &c., That nothing contained in any article or any section of an act, entitled the Workmen's Compensation Act of 1915, shall apply to or in any way affect any person who, at the time of injury, is engaged in domestic service or *agriculture*". (Italics supplied.)

The effect of the supplement was to exclude, without qualification, all agricultural employes from the operation of the act and from any possible jurisdiction of the Workmen's Compensation Board; and their rights remained, unmodified, within the established jurisdiction of the courts. Twenty years later, the Act

of July 18, 1935, P. L. 1316, effective September 1, 1935, specifically amended section 1 of the supplementary act of 1915 by adding the following:

". . . Provided, however, That in cases where the employer of any such person shall have, prior to such injury, by application to the Workmen's Compensation Board, approved by the board, elected to come within the provisions of the Workmen's Compensation Act of one thousand nine hundred and fifteen, and the supplements and amendments thereto, the provisions of this supplementary act shall not apply".

Under this amendment, for a period of two years and four months, it was possible for an agricultural employe to be brought under the act and subject to the jurisdiction of the Workmen's Compensation Board, if his employer took the affirmative step of applying for, and obtaining coverage. Subsequently, the legislature was to undertake two revisions of the Workmen's Compensation Act of 1915, in the course of which the newly created privilege of obtaining coverage for agricultural workers first was withdrawn but finally was reinstated. The withdrawal, effective January 1, 1938, was accomplished by the Act of June 4, 1937, P. L. 1552, which specifically repealed the supplementary Act of June 3, 1915, P. L. 777, and its amendments; and amended the definition of 'employe' in section 104 of the act to read:

"*(a) All* natural persons, *including minors,* who perform services *of any kind, except agriculture services or domestic services performed in a private home,* for another for a valuable consideration. . . ." (Italics in original.)

The exclusionary language, formerly set forth in a supplement, now was incorporated in the main structure of the Workmen's Compensation Act itself. For the next year and a half, employers of agricultural workers had no privilege of voluntarily coming under

the provisions of the Workmen's Compensation Act. The privilege was, however, restored by the revision of 1939. To accomplish this, the legislature repeated the earlier legislative pattern. Effective July 1, 1939, the Act of June 21, 1939, P. L. 520, reenacted and amended section 104 of the original act to read:

"The term 'employe,' as used in this act is declared to be synonymous with servant, and includes—

"[ (a) ] All natural persons, [including minors] who perform services [of any kind, except agriculture services or domestic services performed in a private home] for another for a valuable consideration. . . ." (Brackets in original.)

The exclusionary provision, thus removed from the main body of the act, again was incorporated in supplementary legislation, the Act of June 21, 1939, P. L. 565, which provided:

"Section 1. Nothing contained in any article or any section of the act, approved the second day of June, one thousand nine hundred and fifteen (Pamphlet Laws, seven hundred thirty-six) . . . as last reenacted and amended at the regular legislative session of one thousand nine hundred and thirty-nine, shall apply to or in any way affect any person who at the time of injury is engaged in domestic service or agriculture: Provided, however, That in cases where the employer of any such person shall have, prior to such injury, by application to the Workmen's Compensation Board, approved by the board, elected to come within the provisions of the Workmen's Compensation Act of one thousand nine hundred and fifteen, and the supplements and amendments thereto, the provisions of this supplementary act shall not apply".

This supplement is found in 77 PS §1a, and is the law applicable at the time the facts involved in the instant case arose. From the foregoing survey, it may be seen that legislative provision for the coverage of ag-

ricultural and domestic employes has been the subject of frequent modification since 1915. It is significant, however, that one section of the original statute—embodying the basic legal philosophy of the Workmen's Compensation Act—has remained intact throughout the half century of the history of this law and was successively reenacted without change by the revisionary Acts of June 4, 1937, P. L. 1552, and June 21, 1939, P. L. 520: section 303 of the Act of June 2, 1915, P. L. 736, 77 PS §481, which provides:

"Such agreement shall constitute an acceptance of all the provisions of article three of this act, and *shall operate as a surrender by the parties thereto of their rights* to any form or amount of compensation or damages for any injury or death occurring in the course of the employment, *or to any method of determination thereof, other than as provided, in article three of this act*". (Italics supplied.)

Although jurisdiction, as an isolated factor, cannot be created by mere agreement of the parties (Thompson v. Parke, 131 Pa. Superior Ct. 81, 83 (1938) ; Gnagey v. Pennsylvania Threshermen & Farmers Mutual Casualty Insurance Co., 332 Pa. 193, 195 (1938) ), the language of section 303 makes it clear that the Workmen's Compensation Board acquires jurisdiction of claims only where it is established that the parties, by *voluntary agreement,* have accepted the Workmen's Compensation Act *system,* of which jurisdiction of the board is a single component part. In the case of employes covered by the act, such agreement is established by *presumption*: section 302(a) of the Act of June 2, 1915, P. L. 736, as amended, 77 PS §461; but in the case of employes excluded from coverage, the agreement must be established by *affirmative proof.* Prior to September 1, 1935, this was not possible because up to that time, no statutory privilege of applying for coverage had been extended to employers of

agricultural and domestic help. Compensation claims of agricultural employes based on insurance contracts made within that early period were not within the jurisdiction of the Workmen's Compensation Board (Thompson v. Parke, supra; Gnagey v. Pennsylvania Threshermen & Farmers Mutual Casualty Insurance Co., supra), but properly and successfully were the subject of actions of assumpsit brought in the courts of common pleas: Parke, to use, v. Pennsylvania Threshermen & Farmers Mutual Casualty Insurance Co., 334 Pa. 417 (1939) ; Gnagey v. Pennsylvania Threshermen & Farmers Mutual Casualty Insurance Co., supra. After the privilege of coming under the act had been extended to employers of agricultural and domestic help by the Act of July 18, 1935, P. L. 1316, and again (after a period during which the privilege was withdrawn by the Act of June 4, 1937, P. L. 1552) by the Act of June 21, 1939, P. L. 520, it became possible for the Workmen's Compensation Board to acquire jurisdiction of such claims, but only where there was affirmative proof that the employer had made written application for coverage to the Workmen's Compensation Board and had received the board's approval. Dictum, at variance with this statement of principle, may be found in two lower court decisions: Hetrick v. Furer, 88 Pitts. L. J. 33 (C. P. Allegheny Co., 1939), involved an award of compensation for the death of an agricultural employe made by the Workmen's Compensation Board. The State Workmen's Insurance Fund appealed on the ground that the employer had not complied with the statutory provisions requisite to obtain coverage. The court dismissed the appeal on the ground of estoppel, but went on to say that, even if the doctrine of estoppel was not applicable, the employer had complied sufficiently with the Act of July 18, 1935, P. L. 1316, by taking out the policy and paying the premium. In Eshleman v. Har-

leysville Mutual Casualty Co., 56 Lanc. 73 (C. P. Lancaster Co., 1958), plaintiff was an agricultural employe who brought assumpsit on an insurance policy which contained a voluntary compensation provision. The court "assumed" that the employer had elected to come under the act and that the board had approved his election; but the case was decided on non-jurisdictional grounds. On the other hand, the issue of jurisdiction was squarely presented and decided in Tasy v. Fry, 42 Berks 283, 284, 285 (C. P. Berks Co., 1950). There, plaintiffs brought trespass in two counts under the Survival Act and the Wrongful Death Act to recover damages for the death of their son, an agricultural worker who had been employed on a fruit farm owned and operated by defendants as copartners. Defendants filed an answer averring that the Workmen's Compensation Board had approved an application of the partnership to come under the act, to which plaintiff filed a reply. Defendants moved for judgment on the pleadings on the grounds that the court lacked jurisdiction and that plaintiff had failed to state a claim on which relief could be granted. The motion was denied, and President Judge Mays said:

"This is not a case where the plaintiff must allege and prove that the employe was not within the class of persons contemplated by the Workmen's Compensation Act. There is no presumption that the Act applies.

"The pleadings disclose that the deceased was an agricultural worker. The defendants, Fry and Rick, in their brief, in discussing the reasons for the institution of this suit in this Court correctly stated this latter forum was doubtless elected because the decedent was an agricultural worker and, as such, was prima facie excluded from the benefits and limitations of the Workmen's Compensation Act.

"*If there was an election of the employer to come within the provisions of the Act, it is incumbent upon*

*the employer to plead this as a matter of defense.* This was done by the defendants, Fry and Rick. . . . The plaintiff, in reply to new matter, definitely denied that the defendant partnership, Fry and Rick, ever petitioned to come under the Workmen's Compensation Act. Whether or not there was a proper petition may be a question of fact to be determined. At least, it is so involved that we should not, on the pleadings, determine as a matter of law that what was done by a partnership made up of members in December, 1940, would constitute under the law, an act on the part of the present partnership, Fry and Rick, with the result that the plaintiff would be precluded from his common law action. This can better be done when and if the testimony is heard by the trial judge". (Italics supplied.)

Additional light upon the rationale of jurisdiction in workmen's compensation cases is found in Repyneck v. Tarantino, 403 Pa. 300, 302, 303 (1961). There, plaintiff had been injured through the negligence of a fellow employe while engaged in the course of his employment. Covered by the act, he brought trespass for damages, not against his employer, Posh Construction Co., which was a corporation, but against defendant Posh, who was president of the company, upon the theory that Posh negligently retained the fellow employe notwithstanding knowledge that the man was incompetent. Defendant filed preliminary objections that plaintiff had failed to aver that he was not covered by the act (i.e., section 303, restricting the right of covered employes to seek any compensation other than that provided by the act), and, therefore, that the court had no jurisdiction of the action. Defendant appealed from the order of the lower court dismissing the objections; but the Supreme Court dismissed the appeal and said, per curiam:

"The appeal must be dismissed because it is from a

nonappealable interlocutory order. Posh apparently believes that he has raised a question of jurisdiction and, therefore, that the order of the court below disposing of it is appealable by virtue of Section 1 of the Act of March 25, 1925, P. L. 23, 12 PS §672. This belief is ill founded: Welser v. Ealer, 317 Pa. 182, 176 A. 429. Repyneck's complaint states a common law cause of action in trespass for negligence. The Pennsylvania Workmen's Compensation Act does not deprive the courts of jurisdiction over common law causes of action; under Section 303 of the Act, as amended, 77 PS §481, however, the parties to an employment agreement may voluntarily contract away certain of their rights to sue in tort: Liberato v. Royer & Herr, 81 Pa. Superior Ct. 403, 407-408 (1923), aff'd, 281 Pa. 227, 126 Atl. 257 (1924).

"Posh's defense as set forth in his preliminary objections rests upon the assumption that Section 303, properly construed, means that an employee, by accepting the provisions of Art. III of the Act, surrenders his right to sue an executive officer of his corporate employer for damages resulting from injuries incurred in the course of his employment proximately caused by the officer's negligent performance of an executive function. This defense is akin to the affirmative defense that Posh is the beneficiary of a release or covenant not to sue given by Repyneck for good consideration. We expressly refrain from determining whether or not this defense is meritorious; all that we now decide is that it is not jurisdictional".

In the instant case, it is clear that plaintiff has stated a common law cause of action which is within the jurisdiction of this court. As we have seen, any possible jurisdiction of the Workmen's Compensation Board will depend upon an issue of fact which, at this stage, has not been made apparent on the face of the pleadings and, therefore, is not a proper subject for

disposition on demurrer. Such an issue could have been raised by petition, pursuant to Pennsylvania Rule of Civil Procedure 1017(b) (1), but the opportunity is not irretrievably lost, for the issue can be raised later as new matter in an answer to plaintiff's complaint. If it should be determined that the Workmen's Compensation Board has jurisdiction, the case can be certified to the board, as provided by section 1 of the Act of July 8, 1919, P. L. 764, as amended, 77 PS §712.

With the issue of jurisdiction out of the way, we return to the first principal question stated. In considering it, the historical and rational background developed in the discussion of that problem will again be relevant to this additional aspect of the case. We find unquestioned authority supporting the proposition that an agricultural employe, although not covered by the Workmen's Compensation Act, is entitled to recover from his employer's insurance carrier, compensation measured by the same statutory standard which would be applicable if he had been so covered, in an action of assumpsit on a special contract of insurance issued to his employer. Such a contract usually takes the form of a "rider" or "voluntary compensation endorsement" attached to the insurance policy. Examples are found in Parke, to use, v. Pennsylvania Threshermen & Farmers Mutual Casualty Insurance Co., supra; and Gnagey v. Pennsylvania Threshermen & Farmers Mutual Casualty Insurance Co., supra. In the Gnagey case, the insurance carrier paid the employe weekly compensation, as if he were in fact covered by the act, and then discontinued further payments, claiming that the employe had fully recovered. The claim which the employe then filed with the Workmen's Compensation Board was dismissed for want of jurisdiction. He then brought assumpsit on the insurance contract and recovered a verdict and judgment in the sum of $4,-

421.02. On appeal, the insurance carrier asserted, inter alia, that the claim was barred by the limitation set forth in section 315 of the Workmen's Compensation Act. The Supreme Court affirmed the judgment, and Mr. Justice Drew said:

"The provisions of the policy by which defendant assumed the liability of the insured employer under the Workmen's Compensation Act do not have the comprehensive application contended for in this case since plaintiff is an agricultural worker and can therefore have no claim against the estate under that act. The board's lack of jurisdiction over such cases cannot be remedied by an agreement between the parties: Thompson v. Parke, 131 Pa. Superior Ct. 81. Hence plaintiff's right to recover is based solely on the endorsement attached to the policy providing for the coverage of farm labor. Defendant contends that this endorsement incorporated all the provisions of the Workmen's Compensation Act, and, since this suit was not instituted within a year after the last payment, it is barred by Section 315 of that Act.

"We do not believe that this is a proper interpretation of that agreement. A reasonable construction of the language used leads clearly to the conclusion that the parties intended only to make the schedule of rates and manner of payments of the act a part of their contract. The act contains numerous provisions dealing with the duties of the board, methods of proof, procedural rules, etc., which by their terms can apply only to cases coming within the jurisdiction of the board. Obviously the language here used cannot be construed to incorporate all these provisions into the contract . . ."

Counsel for defendant seek to distinguish Gnagey (and, by the same token, Parke) on the ground that those cases were based upon insurance contracts made prior to 1935 at a time when no statutory privilege of

electing to come under the act had been extended to employers of agricultural help. They assert that, once a privilege had been extended, such parties were restricted to the alternative of either obtaining the right to compensation under the act or not obtaining comparable compensation at all. None of the authorities which have come to our attention make the distinction which counsel suggest. In Salchow v. Pennsylvania Threshermen & Farmers Mutual Casualty Insurance Co., 24 Erie 82 (C. P. Erie Co., 1941), the accident occurred on September 23, 1940, presumably under a contract of insurance made subsequently to July 1, 1939, the effective date of the Act of June 21, 1939, P. L. 520, although the precise date of the contract does not appear in the report of the case. In Turner v. Manufacturers Casualty Ins. Company, 206 Md. 601, 112 A. 2d 670 (1955), the accident occurred September 22, 1952, but the date of the insurance contract is not reported. This case involved an action for declaratory judgment brought by an agricultural employe of a Pennsylvania corporation upon an insurance policy containing a "voluntary coverage" provision. In reversing an order which sustained defendant's demurrer to the complaint, the Court of Appeals of Maryland followed and quoted at length from the opinion in Gnagey v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co., supra. On principle, we can think of no cogent reason why such a distinction should be made. In our opinion, making the distinction would be in direct conflict with the basic policy of the legislature, manifested in the Workmen's Compensation Act, its supplements, amendments and revisions, to allow wide scope to the agreement of the parties. As we have previously pointed out, either employer or employe, although covered by the act, may by appropriate action reject the application of the act. There is nothing in the supplementary Act of June 21, 1939, P.

L. 520, extending to employers of agricultural and domestic help the privilege of coming under the act, which indicates any legislative intent to restrict or limit the contractual freedom of parties who do not choose to avail themselves of the statutory privilege proffered to them.

Turning next to the second principal question stated, counsel for defendant assert that the terms of the contract itself preclude plaintiff from maintaining the instant action and point to that part which reads:

"GLOBE INDEMNITY COMPANY

". . .

"Agrees with the insured. . . . . . . .

"I    Coverage A—Workmen's Compensation

"To pay promptly when due all compensation and other benefits *required* of the insured *by the workmen's compensation law*". (Italics supplied.)

In other words, defendant is not liable to plaintiff in this action if the alleged liability is predicated upon any other basis than the direct mandate of the Workmen's Compensation Act itself. This interpretation does not take proper account of the following additional provision of the policy:

"EXCLUSIONS

"This policy does not apply:

". . .

"(b) unless required by law *or described in the declarations* to domestic employment or to farm or agricultural employment; . . ." (Italics supplied.)

Bearing in mind the fact that the act itself, without any assistance from the policy, prima facie excluded domestic and agricultural employes from coverage, and converting the negative expressions of the policy to positive language, this excerpt may be translated to read:

"This policy *shall apply* to domestic employment or

to. farm or agricultural employment *if* such coverage (a) is required by law, *or* (b) *is described in the declarations"*.

Reference to that part of the contract entitled "Declarations" shows that defendant undertook to provide Margaret L. Hamilton with insurance relating to a single class of employes, referred to by "Code No. 0006" and described as "Farm—All employees other than inservants and clerical office employees including drivers, chauffeurs and their helpers". The estimated total annual remuneration, or "payroll", to provide a basis for calculating the premium, is stated to be $1,500; the rate per $100 of remuneration, which we assume was arrived at after consulting defendant's actuarial experience with employes falling within the classification of "Code No. 0006", is stated to be $2.10; and the estimated annual premium, being the product of the two foregoing factors, is stated to be $31.50. This figure, plus a policy fee, "Code No. 0020", of $8, produces the total estimated annual premium of $39.50, paid by Margaret L. Hamilton. From the modest amount of the estimated annual payroll, we might infer that plaintiff was the *sole employe* with reference to whom the employer sought insurance; certainly, he was the only *type* of worker to whom the parties intended the policy to apply. The foregoing references indicate clearly that plaintiff's coverage as an agricultural employe was "described in the declarations" and that the policy therefore is applicable to him in all its aspects. We cannot agree with counsel's argument that the employer's failure to elect to come under the act had the effect of fragmenting the provisions of the policy with the result that plaintiff might be entitled to proceed under "Coverage B" but not under "Coverage A". It is obvious that the premium charged was based on the broad hazard of injury to the employe *without negli-*

*gence* on the part of the employer. Nothing in the policy indicates that the parties intended, if the employer failed to elect to come under the act, to restrict defendant's liability to the substantially narrower hazard of injury resulting from the negligence of the employer.

We find no merit in defendant's last objection, that plaintiff cannot maintain this action because there is no privity of contract between plaintiff and defendant. The same objection was raised, with others, on behalf of defendant in Salchow v. Pennsylvania Threshermen & Farmers Mutual Casualty Insurance Co., supra, where plaintiff, an agricultural employe, brought an action of assumpsit on an insurance policy with a voluntary compensation endorsement to recover the amount of compensation which would have been due him if the Pennsylvania Workmen's Compensation Act had been operative in his particular case. Although the court sustained the affidavit of defense raising questions of law on other issues, with leave to amend, Judge Evans said, with respect to this issue:

"When the employer entered into this additional contract with the insurance company for an extra premium as consideration, there immediately arose as a gift to the donee, a pure benefit to which his assent is presumed. The donee acquired a right at once upon the making of the contract, and that right was indefeasible. 'Where performance of a promise in a contract will benefit a person other than the promisee that person is a donee beneficiary if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise to all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performances neither due nor supposed nor asserted to be

due from the promissee to the beneficiary': LOGAN v. GLASS, 136 Pa. Superior Ct. 221. The donee beneficiary has an unqualified right of action to enforce the duty of the promisor to perform the promise: LOGAN v. GLASS, *supra;* COM. v. GREAT AMERICAN INDEMNITY COMPANY, 312 Pa. 183".

There is, however, one respect in which the complaint is vulnerable to demurrer. The complaint contains no averment stating plaintiff's weekly wages at the time he was injured. This is essential, inasmuch as section 306(a), art. III, of the Act of June 2, 1915, P. L. 736, as amended, 77 PS §511, bases compensation for total disability upon "wages" of the employe as defined by section 309 of said act, as amended, 77 PS §582. No doubt, plaintiff will be able to supply this deficiency by amendment of the complaint.

It remains to consider defendant's preliminary objections in the nature of a motion to strike off: (1) paragraph 10 of the complaint; and (2) exhibit "B" attached to the complaint. Paragraph 10 reads as follows:

"10. The named insured was induced into entering into the aforesaid contract of insurance as a result of the representations of the defendant, its authorized agents, representatives and employees that said insurance contract would entitle the plaintiff to Workmen's Compensation benefits in the event of injury".

Counsel for defendant point to paragraph 16 of the insurance contract, which provides, in part:

"By acceptance of this policy the insured agrees . . . . that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance".

In the light of this provision, and because the instant proceeding is an action on the contract as it stands rather than an equitable action to reform or to set aside, we are of the opinion that paragraph 10 is

irrelevant to the cause of action and should be stricken.

Exhibit "B" purports to be an itemized list of medical and hospital expenses. From the dates given, one may surmise that the expenses are related to the injury plaintiff sustained on February 20, 1959. There is, however, no allegation in the complaint which even mentioned exhibit "B". It is averred in paragraph 13 that defendant reimbursed plaintiff to the extent of $467 for "drugs, hospital care, nursing and medical care"; but nothing in the complaint explains whether this sum should be credited against or charged in addition to the $1,120.66 total of items set forth in exhibit "B". As it stands, exhibit "B" must be stricken, although it is possible that plaintiff may be able to amend the complaint to show and explain its relevance.

### Order

And now, March 29, 1966, the preliminary objection in the nature of a demurrer is sustained only for the limited reason indicated in the above opinion relating to failure to aver amount of plaintiff's wages; the motion to strike off paragraph 10 and exhibit "B" of the complaint is granted; and plaintiff is allowed 20 days within which to file an amended complaint.